**CUYAMEL FRUIT CO. et al. v. BOSTROM et al.\***

## THE NICARAO.

Circuit Court of Appeals, Fifth Circuit.
May 5, 1927.

No. 4947.

1. Salvage ⟨⟩38—Owner of tugs and pump boat held entitled to $9,250 for salvage of steamship worth $237,700.

Owner of two tugs and pump boat *held* entitled to award of $9,250 for salvage of steamship valued at $237,700, where tugs beached steamship and held it in position.

2. Salvage ⟨⟩38—Crew of tugs beaching steamship worth $237,700 held entitled to $2,750 for salvage service rendered.

Officers and crews of tugs, which beached sinking steamship worth $237,700 and held it in position, *held* entitled to $2,750 for such service.

3. Salvage ⟨⟩38—$4,000 and $3,000 to divers for salvage for services rendered steamship held excessive, and reduced to $500 in each case.

Awards of $4,000 and $3,000 to divers for salvage for services rendered steamship worth $237,700 *held* excessive, and reduced to $500 in each case.

4. Salvage ⟨⟩38—$750 for salvage service to one supplying barge for divers' use and acting as helper held excessive, and reduced to $400.

Award of $750 for salvage service in supplying barge for use of divers in checking leak in steamship worth $237,700, and otherwise acting as helper, *held* excessive, and reduced to $400, $300 of which was for use of barge.

5. Salvage ⟨⟩38—$150 for salvage service rendered by person assisting divers held excessive, and reduced to $75.

Award of $150 for salvage service rendered steamship in assisting divers to slight extent *held* excessive, and reduced to $75.

6. Salvage ⟨⟩38—$100 to helpers for salvage service rendered steamship held excessive, and reduced to $50.

Award of $100 for salvage service rendered steamship worth $237,700, to persons acting as helpers only, *held* excessive, and reduced to $50.

7. Admiralty ⟨⟩124—In libel for salvage, libelants held not taxable with premiums on excessive release bonds exacted by them.

In libel for salvage, libelants should not be taxed with premiums on release bonds exacted by them, where District Court did not see fit to reduce them, notwithstanding that they were excessive.

8. Admiralty ⟨⟩121—Costs in admiralty are within court's discretion.

Costs in admiralty are largely within discretion of court, and may be awarded or withheld as justice may require.

\*Rehearing denied June 13, 1927.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libels by Charles W. Bostrom and others against the steamship Nicarao, wherein W. G. Coyle & Co. filed an intervening libel. From the decree (15 F.[2d] 73), the Cuyamel Fruit Company, claimant and owner of the steamship Nicarao, and others, appeal. Amended and affirmed.

Geo. H. Terriberry and Jos. M. Rault, both of New Orleans, La., for appellants.

Selim B. Lemle, of New Orleans, La. (Lemle, Moreno & Lemle, of New Orleans, La., on the brief), for appellee W. G. Coyle & Co., Inc.

John D. Grace, M. A. Grace, and Edwin H. Grace, all of New Orleans, La., for appellee Bostrom.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This is a case of salvage. The material facts, which are practically undisputed, are these:

The steamship Nicarao, owned by appellant, was discharged from the Jahncke dry dock at New Orleans at about 5 p. m., after undergoing certain repairs. She had no steam up and no crew on board, except the fourth engineer, a boatswain, and one or two others. About 8:30 p. m. the engineer found that the ship was leaking and called upon the superintendent of the dock for aid. It was then discovered that the main circulator discharge, the outside opening of which was 7 inches in diameter, was open, and water was entering through it. It was found impossible to stop the leak with the means at hand, and a telephone call was sent about 9:50 p. m. to W. G. Coyle & Co., owners and operators of harbor tugboats, for a boat to pump out the ship. Coyle & Co. habitually maintain steam on their tugs overnight, and have sufficient crew handy in order to render prompt aid in emergencies. They sent their tug Sipsey, which arrived about 10:15 p. m., say within 25 minutes. She put a steam siphon into the ship, but was unable to make headway against the water. It is contended by appellants that the siphon was defective. On the other hand, the Coyle Company say that the lift was too high to permit any siphon to work, and that they asked that a barrel be rigged up about half way of the lift, so that the water could be re-

layed, but that this was not done. Another telephone call was sent to Coyle & Co., and the tug Adler responded promptly, but she was not able to assist in pumping the water. By this time the ship was badly listed to port and in danger of sinking.

As the tugs found they were unable to reduce the water, they decided to take the Nicarao across the river and beach her. The Sipsey and the Adler towed the Nicarao across the river and pushed her up on a sloping bank, where she was run head on to the ground in about 6 feet of water at her bow. Her stern was then pushed over towards the shore as much as possible, where there was about 30 feet of water under her stern. These tugs stood by, holding her in place by putting their bows against her and having their engines go full speed ahead. Later on, but after the salvaging of the ship had been practically accomplished, except for the pumping out of her hold, six other tugs came up and assisted in holding her against the bank. Those six tugs are not parties to this appeal, having been settled with in some way. About 3 o'clock in the morning the Coyle Company sent a pump boat. She began pumping, and perhaps rendered some service at that time.

When the ship arrived on the west bank, where she was beached, four men on shore, Bostrom, Lawson, Saucer, and Young, assisted in making her fast. Bostrom had assumed charge of this duty, and he also took it upon himself to telephone for a diver, Fritz John. John arrived between 3 and 4 in the morning without his equipment, returned for it, and reported back to duty about 6 o'clock. Before this time a number of employees of the Jahncke dry dock had arrived in charge of a foreman, and they assisted in subsequent operations. Another diver, Rieffel, was also employed, and John and Rieffel went down and eventually succeeded in closing the opening by stuffing in with a bag of okum, after they had vainly tried to stop it with a wooden plug. After the opening was closed, the ship was pumped out and floated. In addition to helping in making fast the lines, Bostrom furnished a small barge for the use of the divers, and it suffered some damage. He and Lawson also assisted the divers. The value of the Nicarao was fixed by the District Court at $237,700, which is not seriously disputed. The value of the Sipsey was estimated at $70,000, the Adler at $100,000, and the pump boat at $8,500 by the District Court.

The District Court entered a decree awarding salvage as follows: Bostrom, $750; Lawson, $150; Young, $100; Saucer, $100; Coyle & Co., on behalf of their tugs and pump boat, $9,250. The officers and crew of the Adler and Sipsey, $2,750, to be divided among them in certain proportions, making a total award to the tugs and their crews, together with the pump boat, of $12,000. He also awarded Rieffel $4,000 and John $3,000 for their services as divers. Appellants admit that all of the appellees rendered some services in the nature of salvage, but contend that the amounts awarded are excessive, and seek a reversal on that ground.

[1, 2] There is no doubt that the services of the tugs Sipsey and Adler were very valuable, even though it be conceded they were unable to render the pumping service for which they were originally called. As the vessel was badly listed and making water rapidly, the danger of her sinking was imminent. It is apparent that no other tugs in the harbor of New Orleans were available at the time, and, had there been further delay in moving the Nicarao from the Jahncke dock to where she was beached, she would have become a total loss. There was considerable danger to the tugs, as the Nicarao might have suddenly capsized. Had she done so, she might also have capsized one or both the tugs before the lines could have been cast off or cut. Furthermore, the fact that Coyle & Co. kept steam constantly on their tugs, and the crew within easy call, for the purpose of rendering just such services as they performed, is worthy of consideration. Under the circumstances, we are not disposed to amend the award made to Coyle & Co. and the crews of the tugs.

[3] Under the circumstances disclosed, we think the award made to the divers is grossly excessive. No doubt the occupation of a marine diver is very dangerous under the best of conditions, and for that reason a diver is well paid when his services are engaged by contract. It is shown that the ordinary charge for divers is $50 a day. The divers were under water two hours at the most, and their total efforts did not exceed one day's time. There is evidence in the record to the effect that the services performed to the Nicarao were exceedingly dangerous, in that she might have turned over on them and crushed them at any moment. On the other hand, it was shown that there was little danger of this occurring, as she was on a sloping bank and being held firmly in place by a number of tugs. Considering all the evidence in the case, and the fact that the divers responded promptly, and that without their services it would have been impossible to complete the

salvaging of the ship, we think they should be awarded the sum of $500 each.

[4-6] The award to Bostrom, Lawson, Young, and Saucer is also excessive. Their presence was accidental, and their services were very slight. Bostrom displayed considerable enterprise in calling a diver, although there is no doubt that his efforts in this were somewhat officious, and were also unnecessary. We think a fair award to these men should be proportioned as follows: Bostrom to receive $100 and the amount awarded him by the District Court for the use of his barge and damages sustained by it, in the sum of $300, making a total of $400. Lawson assisted the divers to some slight extent. His award should be reduced to $75. Young and Saucer will be well paid with an award of $50 each.

[7] Appellants contend that appellees Bostrom, Young, Lawson and Saucer, John, and Rieffel should be taxed with the premiums on the release bonds exacted by them. It appears that the first four named filed an original libel. John and Rieffel also filed an original libel. Coyle & Co. and the crews on the tugs Sipsey and Adler filed an intervening libel in the Bostrom Case. All the libels were consolidated for trial, and the case is before us on a single record. Bostrom et al. demanded a release bond of $10,000. John and Rieffel demanded a release bond of $18,000. There is no doubt that these bonds are excessive, but that was a matter within the discretion of the District Court. As the District Court did not see fit to reduce the amount of the bonds, the premiums could hardly be attributed to the action of the libelants.

[8] Costs in the admiralty are largely within in the discretion of the court, and may be awarded or withheld as justice may require. On the appeal, the general rule would be that, as the judgment in favor of Coyle & Co. has not been amended, costs of appeal would fall upon appellant, so far as that claim is concerned, while costs of appeal would fall upon the other appellees. Considering the very material reductions made in the awards to the appellees whose claims have been reduced, and the fact that it is practically impossible to say what portion of the costs should be borne by them, we think that justice will be best served by requiring the entire costs of appeal to be paid by appellant, and we may say that we have taken this into consideration in amending the judgment.

The judgment of the District Court will be amended in accordance with this opinion, and, as amended, it is affirmed.